### J. P. ATTEBERRY, ADMINISTRATOR, v. MRS. A. G. BURNETT ET AL.

#### No. 1873.        Decided November 18, 1908.

**1.—Vendor and Purchaser—Express Lien—Legal Title.**

The superior legal title reserved to the vendor of land by his retaining an express lien for the payment of the purchase money remains in him after his transfer of the purchase money note to another, in trust for the benefit of such holder of the note, and on his death passes, in like trust, to his heirs; on their conveyance of same to the holder of the note he may recover the land from the vendee and those claiming under him, though the purchase money note is barred by limitation.   (Pp. 122, 123.)

**2.—Same—Cases Distinguished.**

Bledsoe v. Fitts, 47 Texas Civ. App., 578. Distinguished as not in conflict with ruling in this case.   (P. 122.)

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

*Yates & Carpenter* and *Atteberry & Peak*, for appellant.—The said legal or superior title being a property right may be conveyed or devised the same as all other property rights, and will in same manner descend to heirs, and may be by them conveyed the same as any other property they may inherit; and said heirs or any third party to whom they may convey said title, either before or after the note is barred by limitation, may enforce said legal title by rescission of contract of sale of land, in same manner and under the same circumstances as could the original vendor, if still living, and still owning said note and legal title.   7 S. W., 834; 29 S. W., 759; 6 S. W., 851; Pom. Eq. Jur., 1261, page 270; 60 Texas, 219; 62 Texas, 457.

*Neyland & Neyland, for appellee.*—Where there is a sale of land partly or wholly on a credit, and a lien is expressly reserved to secure the payment of the note by the purchaser, and the vendor sells the notes without conveying his interest in the land, the vendor then holds the superior title as a limited trustee for the benefit of the assignee, and he ceases to retain any property, right, or interest in the land personal to himself. Douglass v. Blount, 95 Texas, 382, 25 S. W., 130; Farmers Loan & Trust Co. v. Beckley, 93 Texas, 267; McCamly v. Watterhouse, 80 Texas, 340; Russell v. Kirkbride, 62 Texas, 455; Brotherton v. Anderson, 27 Texas Civ. App., 587; Willis v. Summerville, 3 Texas Civ. App., 509.

After the transfer of the note by the vendor he occupies the position of limited trustee, then when the vendor dies no descendable interest vests in his heirs and a deed from the heirs conveyed no such title to the land as would support an action of trespass to try title, and the court did not err in sustaining defendant's demurrer. Douglass v. Blount, 95 Texas, 382; Farmers Loan & Trust Co. v. Beckley, 93 Texas, 267; McCamley v. Watterhouse, 80 Texas, 340; Russell v. Kirkbride, 62 Texas, 455, 25 S. W., 130.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified question from the Court of Civil Appeals of the Fifth Supreme Judicial District, as follows:

"Atteberry, as an administrator of the estate of O. W. Spradling, deceased, instituted this suit against the appellees, Mrs. A. G. Burnett, W. F. Jones and F. M. Newton, on the 19th day of January, 1907. The original petition, omitting its formal parts, is as follows:

" 'That on or about the 1st day of August, 1905, O. W. Spradling departed this life, and that thereafter, to wit: on the 7th day of September, 1906, letters of administration on the estate of said O. W. Spradling were duly granted to J. P. Atteberry, plaintiff, by the County Court of Hunt County, Texas, and that thereupon, plaintiff duly qualified as such administrator. That administration of the estate of O. W. Spradling is still open and pending, and that plaintiff and defendants all reside in Hunt County, Texas. That heretofore, to wit: on the 10th day of February, 1898, the defendant, Mrs. A. G. Burnett, executed and delivered to C. A. Langford and A. Cameron her certain promissory note for $1,025, payable at Greenville, Texas, both principal and interest. Said note was due on or before the first day of January, 1899, with interest from its date until paid at the rate of 10 percent per annum, the interest payable annually as it accrues, for value received. This note was given as part payment for a certain lot or parcel of land, situated in the city of Greenville, Hunt County, Texas, and being a part of the Epps Gibbons survey, and being the east half of a tract of land deeded by T. A. Ball to W. A. Mowery, January 6, 1887, deed recorded in Book Q, page 354, Hunt County Deed Records, and bounded as follows: Beginning at the S. E. corner of said tract deeded by T. A. Ball to W. A. Mowery; thence north with E. B. line of same 86 vrs.; thence east 37½ vrs. to beginning.

And it was agreed that if this note is placed in the hands of an attorney for collection, or if collected by suit- that said A. G. Burnett is to pay 10 percent additional as attorney's fees, both on principal and interest. That this note was given for a part of the purchase money of the above described premises, and to secure the payment of the said note a vendor's lien was expressly retained on said land as shown in deed of conveyance, bearing even date of said note, from C. A. Langford and wife, E. C. Langford, and said A. Cameron to said Mrs. A. G. Burnett. That said note was before maturity transferred and delivered to said O. W. Spradling for a valuable consideration, whereby said O. W. Spradling became the legal owner and holder of said note. After the transfer of said note as aforesaid, said A. Cameron and C. A. Langford departed this life; said A. Cameron leaving all interest he held in the above described land to his surviving widow, P. A. Cameron, and said C. A. Langford leaving as his only heirs J. D. Langford, and his surviving widow, E. C. Langford, both of whom were twenty-one years of age on the twelfth day of January, 1907, and long prior thereto. On the last date above mentioned there was no administration pending nor any necessity for one on the estate of either said A. Cameron or said C. A. Langford. That on January the twelfth, 1907, said J. D. Langford, Mrs. E. C. Langford and Mrs. P. A. Cameron executed a deed to J. P. Atteberry, administrator, plaintiff, conveying all their right, title and interest to said J. P. Atteberry, administrator, in the above described premises. That when said note was executed said F. M. Newton endorsed the above described note, thereby becoming responsible for the payment of the same. That defedants, though often requested, have never paid said note, but a part thereof, as follows: On January 2, 1899, $558.05; April 12, 1901, $75.00; June 17, 1901, $107.50; October 24, 1901, $100.00; but the balance or remainder of said note remains still due and unpaid, to plaintiff's damage seven hundred and twenty-five dollars, and defendants still refuse and fail to pay said balance. That said W. F. Jones is setting up some kind of a claim to the above described land, which is a cloud on the title to plaintiff.

" 'Wherefore he prays that defendants be cited to answer this petition that he have judgment for his debt, interest and costs of suit, and ten percent additional as attorney's fees, and for the foreclosure of his lien, on the above described premises, and that they be decreed to be sold according to law; that the sheriff or other officer executing said order of sale, shall place the purchaser of the property sold under the same in possession thereof, within thirty days after the date of sale, and for general and equitable relief. But if the court should hold that plaintiff's note is barred by limitation, then plaintiff prays in the alternative for rescission of said sale and to recover said land from said defendants, and that all rights and title of said defendants be divested out of them and be vested in this plaintiff, and that all cloud be removed from plaintiff's title, and for such other and further relief as the court may deem right in law and equity.'

"The defendant, Mrs. Burnett, answered by a general demurrer,

general denial and plea of the statute of limitation of four years in bar of the note sued on. The defendant, Newton, answered, confessing liability on said note. The defendant, Jones, pleaded a general demurrer, general denial, not guilty, and among other things, that he became the owner, in fee simple, of the title to the land described in the plaintiff's petition March 30, 1899, and had held peaceable and adverse possession, etc., of the same under a deed duly recorded for more than five years, next before the commencement of this suit. He prayed that plaintiff take nothing and that he be quieted in his title to the land. By supplemental petition appellant after several special exceptions to appellee Jones' answer, pleaded that in his capacity as administrator, as aforesaid, he was on, to wit: the —— day of April, 1899, lawfully seized and possessed of the land in his original petition described, holding the same in fee simple; that on the day and year last aforesaid, the defendants entered upon said premsies and ejected the plaintiff therefrom, and unlawfully withheld the possession thereof from this plaintiff, to his damage in the sum of $100. Wherefore, he prays as in his original petition, and that in the event the court should sustain the defendant's, Mrs. Burnett's pleas of limitation as to said note, he prays for cancellation and rescission of the contract of sale, and for restitution of said premises, for costs of suit, and all other relief, both general and special, to which he may be entitled in the premises. A trial by the court without a jury resulted as follows: Judgment in favor of plaintiff against F. M. Newton for the sum of $748.97, and in favor of Mrs. Burnett and Jones that plaintiff take nothing as against them on the note sued on and that they recover their costs. The general demurrers of Mrs. Burnett and W. F. Jones to that portion of the plaintiff's petition seeking to rescind the sale of the land and to recover the same were sustained and plaintiff refusing to amend, it was held that Jones was the owner of the land and judgment was rendered divesting all title out of plaintiff, Atteberry, as administrator of the estate of Spradling, deceased, and investing the same in Jones. From the judgment thus rendered appellant has appealed to this court and assigns the following errors:

First, that "the court erred in sustaining the general demurrer of defendant, W. F. Jones, to plaintiff's petition, filed herein." Second, "that the court erred in holding that the superior title to the land in controversy held by C. A. Langford and A. Cameron did not descend to their heirs at their death, and that the same could not by said heirs be transferred to plaintiff."

"This court at a former day of the present term reversed and remanded this cause for trial, and it is again before us on motion for a rehearing. Our opinion appears to be in conflict with the decision of the Court of Civil Appeals for the Sixth Supreme Judicial District in the case of Bledsoe et al. v. Fitts, 105 S. W., 1142, hence the necessity or advisability of certifying the question involved for the decision of the Supreme Court.

"Question 1. Did the trial court err in sustaining the general

demurrer of W. F. Jones to that portion of the plaintiff's petition seeking to recover the land?

"Question 2. Does the superior title, which remains in the vendor of land where the vendor's lien is expressly reserved in the deed to secure the purchase money note given therefor, and which note has been assigned to a third party, descend, upon the death of the vendor (he not having conveyed such title before his death) to his heirs, and will it, when conveyed by them to the assignee of such note after it is barred by the statute of limitation, support an action of trespass to try title by him to recover the land?"

The two questions submit the same proposition of law, to which we answer that upon the death of C. A. Langford and A. Cameron the legal title to the land in question descended to and vested in their heirs in trust for the holder of the vendor's lien note and the conveyance made by the heirs of the said Langford and Cameron to J. P. Atteberry, administrator of Spradling, vested in the latter the legal title to the land for the benefit of the estate he represented.

The decision of the Court of Civil Appeals in the present case is not in conflict with Bledsoe v. Fitts, 47 Texas Civ. App., 578. In that case the original vendor of the land still retained the ownership of the purchase money note at the time of her death. She died without children, leaving a husband and sisters, and the issue presented was, who inherited from her the vendor's lien note? Her sisters claimed that as the legal title to the land remained in her that therefore the vendor's lien note would descend as if it was real estate, while the husband claimed that he inherited the note from her as personal property. That case was presented to this court on application for writ of error and the writ refused for the reason that the note was personal property and descended to the husband. We see nothing in the opinion of Justice Levy which would justify the conclusion that it was intended by that court to decide the question here presented.

Langford and Cameron, the original vendors, having transferred the note to Spradling, held the legal title to the land in trust to secure the payment of the note. When Langford and Cameron died the legal title must have passed to and vested in some one; it could not vest in the holder of the note unless it was conveyed to him by the original vendors of the land or their heirs; it could not vest in the vendee until the purchase money was paid, therefore, to preserve the trust the title must pass and vest by descent in the heir at law of the deceased vendors. 1 Perry on Trusts, sec. 342; Wall v. Bright, 1 J. & W., 494.

The trust in this case is similar to that which exists in the vendor under an executory contract for the sale of land after the purchase money has been paid. In such case the vendor holds the legal title in trust for the vendee and, the original vendor dying, the legal title descends to the heir for the benefit of the cestui que trust. We can see no reason for a distinction between that class of cases and the one under consideration; in each the vendor

is wholly divested of the equitable title to the land and in neither case does the descent confer upon the heir a beneficial interest in the land, but the legal title is a valuable right held by the vendor for the holder of the note. The vendor could not terminate this trust by conveying the land to another, nor by purchasing the equitable title. Russell v. Kirkbride, 62 Texas, 455. It can be united with the equitable estate only by payment of the purchase money. To hold the legal title did not descend to the heir is to hold that it was extinguished and that there is an estate in land to which there is no legal title in existence. We have not been able to find any authority in point, but we believe that the application of the general principles above stated brings the correct solution of the question as expressed in our answer above.